**KOLLER LAW LLC**
David M. Koller, Esq. (90119)
Jordan D. Santo, Esq. (320573)               *Counsel for Plaintiff*
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
T: (215) 545-8917
F: (215) 575-0826
davidk@kollerlawfirm.com
jordans@kollerlawfirm.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ROBERT KINNARD,** | : | Civil Action No. |
| 7209 Limekiln Pike | : | |
| Philadelphia, PA 19138 | : | |
|      Plaintiff, | : | |
| | : | |
| v. | : | **Complaint and Jury Demand** |
| | : | |
| **ALLIED PROTECTION SERVICE,** | : | |
| **LLC d/b/a ALLIED UNIVERSAL,** | : | |
| 51 N 39th Street | : | |
| Philadelphia, PA 19104 | : | |
| | : | |
| 161 Washington Street, Suite 600 | : | |
| Conshohocken, PA 19428 | : | |
|      Defendant. | : | |

**CIVIL ACTION**

Plaintiff, Robert Kinnard (hereinafter "Plaintiff"), by and through his attorney, Koller Law, LLC, bring this civil matter against Allied Protection Service, LLC d/b/a Allied Universal (hereinafter "Defendant"), for violations of the Age Discrimination in Employment Act ("ADEA"), the Pennsylvania Human Relations Act ("PHRA") and the Philadelphia Fair Practices Ordinance ("PFPO"). In support thereof, Plaintiff avers as follows:

**THE PARTIES**

1. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

2. Plaintiff is an adult individual residing at the above captioned address.

3. Upon information and belief, Defendant Universal Protection Service, LLC d/b/a Allied Universal is a security service provider working out of the location 51 N 39th Street, Philadelphia, PA 19104 and corporate headquarters located at 161 Washington Street, Suite 600, Conshohocken, PA 19428.

4. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who Plaintiff alleges had the authority to make decisions concerning Plaintiff's employment. In making said decisions, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

5. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who acted directly or indirectly in the interest of the employer. In so acting, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

## JURISDICTION AND VENUE

6. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

7. The Court may properly maintain personal jurisdiction over Defendant because the Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction and comply with traditional notions of fair play and substantial justice, thus satisfying the standard set forth by the United States Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny.

8. The Court may exercise original subject-matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States

and seeks redress for violations of federal law.

9. The Court may also maintain supplemental jurisdiction over state law claims set forth herein pursuant to 28 U.S.C. § 1367(a) and Rule 18(a) of the Federal Rules of Civil Procedure because they are sufficiently related to one or more claims within the Court's original jurisdiction that they form part of the same case or controversy.

10. Venue is properly laid in the Eastern District of Pennsylvania pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2) because Plaintiff is domiciled in this judicial district, the Defendant is located in this judicial district and because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

11. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

12. Plaintiff exhausted his administrative remedies under the ADEA, the PHRA and the PFPO.

13. Plaintiff timely filed a Charge of Discrimination ("Charge") with the U.S. Equal Employment Opportunity Commission ("EEOC"), signed on October 3, 2024, alleging age discrimination against Defendant.

14. The Charge was assigned a Charge Number 530-2025-00500 and was dual filed with the Pennsylvania Human Relations Commission ("PHRC").

15. The EEOC issued Plaintiff a Dismissal and Notice of Rights ("Right to Sue") relative to the Charge and that Notice is dated September 17, 2025.

16. Prior to the filing of this action, Plaintiff notified the EEOC of his intent to proceed with a lawsuit in federal court.

17. Plaintiff files the instant Complaint within ninety (90) days of his receipt of his Right to Sue in this matter, as it relates to his federal law claims, and within two (2) years of the issuance of the Right to Sue in this matter as it relates to his PHRA claims.

18. Plaintiff has exhausted his administrative remedies as to the allegations of this Complaint.

## MATERIAL FACTS

19. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

20. Plaintiff was born in 1954.

21. In or around January 2022, Defendant hired Plaintiff in the position of Security Officer.

22. Plaintiff was well qualified for his position and performed well.

23. Defendant assigned Plaintiff to work out of Penn Presbyterian Medical Center.

24. Plaintiff was one of two (1 of 2) Security Officers assigned to the Trauma Emergency Area (Unit 3A) of Penn Presbyterian Medical Center.

25. In or around December 2023, Daryl Claitt (40's), Account Manager, attempted to terminate Plaintiff after he received a write up.

26. Claitt wrote Plaintiff up for allegedly wrongly letting a patient through security with a sizable knife.

27. Batons, knives, guns or any other instrument capable of causing bodily injury or death are not allowed in Defendant.

28. However, Defendant had video footage that Plaintiff properly and thoroughly searched this patient at Security.

29. Claitt even admitted Plaintiff did a thorough search job on the video footage.

30. However, Claitt said that the next morning (8 am discharge time), when the patient was leaving after hours at Defendant, a knife was found in the patient's bed.

31. Importantly, that patient was free to go in and out of Defendant, even after Plaintiff's shift was over (12:30 am, Plaintiff's shift relief was late arriving to work).

32. The patient could have come in with the knife any time after Plaintiff clocked out his shift at Defendant.

33. Plaintiff complained about his write up to his Union.

34. Melissa Riggs, Union Representative, helped Plaintiff file a grievance.

35. Ultimately, Defendant threw away Plaintiff's write up, week suspension and termination threat.

36. Plaintiff was awarded his pay, reporting to work.

37. In or around early June 2024, a patient came up to the first security checkpoint metal detector (Unit 3) where Plaintiff's partner, Christopher Kedanis, was working in the Penn Presbyterian Medical Center Trauma Emergency Area.

38. The patient gave Kedanis a retractable baton and a black hair pick to hold at the security checkpoint that the patient could retrieve when he was leaving Defendant.

39. Plaintiff did not notice if Kedanis had logged the confiscated items in the binder which was kept at the metal detector.

40. Kedanis put the baton and black hair pick in a hospital supplied confiscation bag and placed it in the bucket just inside the office door where Plaintiff (Unit 3A) was working.

41. Plaintiff inspected the baton for its legality.

42. Antoine Curry, Security Officer Unit 4A, was present witnessing the baton inspection.

43. Plaintiff and Curry both agreed that the baton should have been better maintained.

44. The baton was poorly kept, dirty, dull, the wand was bent and its action not oiled.

45. Plaintiff put the baton back in the bag and logged it on his shift report sheet.

46. Further, Plaintiff informed Mondre Jihid Tyler, Supervisor, of this so its presence would be known.

47. It was kept in the metal detector office and not the firearms boxes because it was too big to fit inside.

48. Plaintiff called Tyler to let him know the baton was in the office.

49. Tyler came in and looked at the baton, approving its placement.

50. In addition, this report was "passed down" to the next shift.

51. Two (2) days later, the patient came back to retrieve his belongings when he was discharged.

52. The patient presented himself to the Security Officer at the metal detector to get his baton and other items back.

53. The patient was directed to Plaintiff.

54. Plaintiff went to the office to find the patient's belongings.

55. The baton was missing from the bag but his black hair pick was present.

56. Plaintiff did not know where the baton was.

57. Apologizing to the patient, Plaintiff followed protocol and gave the patient the hospital contact number for Patient Guest Relations to call about his lost item.

58. On or about June 13, 2024, Claitt, Aliyah Carter (late 40's/early 50's), District Manager, and Margaret Palez, Union Representative (friends with Carter), pulled Plaintiff into a meeting.

59. Carter and Claitt did not mention the June 14, 2024 incident. Instead, Claitt and Carter tried to terminate Plaintiff for allegedly abandoning his post the night before.

60. On that night, Plaintiff's relief, another employee of Defendant, had not come in to take over Plaintiff's position at the security checkpoint that night.

61. Plaintiff explained to Claitt that his relief never came in or called that he would be late that day.

62. Importantly, Plaintiff told Claitt he informed Mr. Hunter (first name unknown), Ben (Last Name Unknown), and Beauty Zainab, Supervisors, that he could stay an extra thirty (30) minutes after his shift that night, because his relief had not come in.

63. After that, at around 1:00am, Plaintiff informed Hunter, Ben and Zainab that he needed to go home to care for his wife, who has several health conditions.

64. Hunter said "okay" that Plaintiff could leave at this point, as he had already worked past his scheduled hours.

65. Per Defendant's policy, Supervisors are to take over stations if relief doesn't come in. Plaintiff reminded Claitt and Carter of this.

66. Once Plaintiff explained this to Claitt and Carter, Claitt and Carter ended the meeting without terminating Plaintiff.

67. Carter threw out the write up.

68. However, the next day, on or about June 14, 2024, Plaintiff met with Matthew Myles, Union Representative, Claitt, and Aliyah Carter, District Manager, again.

69. At this time, Carter immediately suspended Plaintiff. Claitt and Carter alleged that Plaintiff did not follow proper policy and walked out of Defendant with the baton on June 14, 2024.

70. On or about June 28, 2024, Plaintiff had a meeting with Myles, Claitt, Carter and Myles's trainee (name unknown) to discuss his suspension and unwarranted write up.

71. At this meeting, Carter all of a sudden claimed that Plaintiff was suspended for not properly documenting the patient's baton on or around June 14, 2024.

72. Carter and Claitt claimed that Plaintiff had taken the baton off of Defendant's property. This is entirely fabricated.

73. Carter tried to show Plaintiff video footage to support her allegation that Plaintiff had "stolen" the baton from Defendant.

74. Carter showed Plaintiff a video of himself taking a clear bag from the security checkpoint where he was stationed and walking out of Defendant with the bag.

75. However, this video footage was so distorted that nobody could identify what was actually in the bag.

76. Plaintiff reiterated these were his personal belongings he was taking home after his shift, and not the baton in question.

77. Further, Plaintiff pointed out that, in the footage, Plaintiff picked up the bag from where he sat at the security checkpoint, not where the confiscated items are kept.

78. Still, Carter pressed the issue.

79. Carter began to bring up minor infractions from prior, including the knife incident and abandoning post incident, all of which had been thrown out prior.

80. Carter attempted to make Plaintiff state he would pay for the lost baton as a way of getting him to admit guilt.

81. Plaintiff reiterated that he did not take the baton from Defendant.

82. At the end of the meeting, despite Plaintiff's flat denial of the allegations, Carter and Claitt terminated Plaintiff's employment over the incident.

83. Plaintiff was 70 years old at the time of his termination.

84. Plaintiff is an experienced, licensed Security Officer.

85. During his time with Defendant, Plaintiff has seen over two hundred (200) older licensed Security Officers terminated from Defendant.

86. Defendant has replaced these Security Officers with young, inexperienced non-licensed Security employees in their 20's and early 30's.

87. Defendant discriminated against Plaintiff due to his age in violation of the ADEA, the PHRA and the PFPO.

88. Defendant's acts and/or omissions were willful or performed with reckless disregard to Plaintiff's federal statutorily protected rights.

## COUNT I – AGE DISCRIMINATION
## AGE DISCRIMINATION IN EMPLOYMENT ACT

89. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

90. Plaintiff was born in 1954.

91. Plaintiff was qualified to perform the job.

92. Defendant terminated Plaintiff.

93. Defendant treated younger employees more favorably than Plaintiff.

94. Defendant has no legitimate non-discriminatory reason for its actions.

95. As a result of Defendant's unlawful age discrimination, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT II – AGE DISCRIMINATION
## PENNSYLVANIA HUMAN RELATIONS ACT

96. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

97. The foregoing conduct by Defendant constitutes unlawful discrimination against Plaintiff on the basis of his age.

98. As a result of Defendant's unlawful discrimination, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

**COUNT III – AGE DISCRIMINATION**
**PHILADELPHIA FAIR PRACTICES ORDINANCE**

99. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

100. The foregoing conduct by Defendant constitutes unlawful discrimination against Plaintiff on the basis of his age.

101. As a result of Defendant's unlawful discrimination, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, Robert Kinnard, requests that the Court grant him the following relief against Defendant:

    (a)    Compensatory damages;

    (b)    Punitive damages;

    (c)    Liquidated damages;

    (d)    Emotional pain and suffering;

    (e)    Reasonable attorneys' fees;

(f) Recoverable costs;

(g) Pre and post judgment interest;

(h) An allowance to compensate for negative tax consequences;

(i) A permanent injunction enjoining Defendant, its directors, officers, employees, agents, successors, heirs and assigns, and all persons in active concert or participation with it, from engaging in, ratifying, or refusing to correct, employment practices which discriminate in violation of the ADEA, the PHRA and the PFPO.

(j) Order Defendant to institute and implement, and for its employees, to attend and/or otherwise participate in, training programs, policies, practices and programs which provide equal employment opportunities;

(k) Order Defendant to remove and expunge, or to cause to be removed and expunged, all negative, discriminatory, and/or defamatory memoranda and documentation from Plaintiff's record of employment, including, but not limited, the pre-textual reasons cited for its adverse actions, disciplines, and termination; and

(l) Awarding extraordinary, equitable and/or injunctive relief as permitted by law, equity and the federal statutory provisions sued hereunder, pursuant to Rules 64 and 65 of the Federal Rules of Civil Procedure.

## **JURY TRIAL DEMAND**

Demand is hereby made for a trial by jury as to all issues.

## **CERTIFICATION**

I hereby certify that to the best of my knowledge and belief the above matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding, nor at the present time is any other action or arbitration proceeding contemplated.

|  |  | **RESPECTFULLY SUBMITTED,** |
|---|---|---|
|  |  | **KOLLER LAW, LLC** |
| Date: December 16, 2025 | **By:** | **_/s/David M. Koller_**<br>David M. Koller, Esquire<br>Jordan D. Santo, Esquire<br>2043 Locust Street, Suite 1B<br>Philadelphia, PA 19103<br>215-545-8917<br>davidk@kollerlawfirm.com<br>jordans@kollerlawfirm.com |

*Counsel for Plaintiff*